IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HEIDI HANNA and CHARLES C. HILL, | § § § | |
| Plaintiffs, | § § § | |
| v. | § § | |
| PETER KIM BLANCHETTE, MARY ELLEN BLANCHETTE, ADAM BLANCHETTE, MATT BLANCHETTE, JOEL BLANCHETTE, AARON BLANCHETTE, MARK BLANCHETTE, BLANCHETTE PRESS, LTD., BLANCHETTE PRESS, INC., and TOM DENNIS, | § § § § § § § § § § § | CIVIL ACTION NO. H-13-3119 |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending are Defendant Blanchette Press Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction (Document No. 7), Defendants Blanchette Press Ltd. and Blanchette Press Inc.'s Motion to Dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 9(b) and 12(b)(6) and Alternate Motion For A More Definite Statement (Document No. 8), Defendants Peter Kim Blanchette, Mary Ellen Blanchette, Adam Blanchette, Matt Blanchette, Aaron Blanchette, and Mark Blanchette's Amended Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (Document No. 10), and Defendant Joel Blanchette's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (Document No. 31). After carefully considering the motions, responses, replies, surreply, and the applicable law, the Court concludes as follows.

I.   Background

Plaintiffs Heidi Hanna ("Hanna") and Charles C. Hill ("Hill," and, together with Hanna, "Plaintiffs") bring this suit against Defendants Peter Kim Blanchette ("Kim Blanchette"), Mary Ellen Blanchette ("Mary Blanchette"), Adam Blanchette, Matt Blanchette, Aaron Blanchette, Mark Blanchette, Joel Blanchette (collectively, "the Blanchettes"), and Blanchette Press, Ltd. ("Blanchette Press"), alleging that Defendants defrauded them of more than $8.5 million.[1] The Blanchettes--Kim and Mary Blanchette and their five adult sons--are Canadian citizens who reside in British Columbia, Canada.[2] Blanchette Press, of which Kim Blanchette is president, is a Canadian limited liability company doing business in Vancouver, British Columbia.[3]

---

[1] Document No. 14 (1st Am. Compl.).  Plaintiffs also sued Blanchette Press, Inc. ("BPI"), a wholly owned subsidiary of Blanchette Press incorporated in Texas, but BPI was dismissed from this action as improperly joined.  Document No. 26.  Plaintiffs' Original Complaint alleged causes of action against Tom Dennis, the broker who introduced Plaintiffs to the Blanchettes.  Document No. 1-3 at 10.  Dennis was never served, and Plaintiffs' First Amended Complaint alleges no causes of action against him.  *See* Document No. 14.

[2] Document No. 14 ¶¶ 4-5; Document No. 31, ex. 1 ¶ 2.

[3] Document No. 14 ¶ 6.

Plaintiffs, a married couple, own a small marketing business in Houston.[4]   In the mid-2000s, Blanchette Press became their preferred printer.[5]   Blanchette Press underwrote and provided printing for annual design conferences held by Hill in Texas, and Plaintiffs allege that the printed materials provided by Blanchette Press were distributed to "attendees from Texas and beyond."[6]   As a result of doing business with one another, the two families became good friends, traveling and spending holidays together.[7]

Plaintiffs allege that beginning in late 2011, Joel Blanchette fraudulently caused Hanna to transfer in excess of $8.5 million to Joel Blanchette's Chase bank account in Texas, and that "others of the defendants conspired with, assisted, aided or abetted Joel Blanchette in perpetuating the fraud by active participation/and or attempting to conceal the fraud from Mr. Hill and Ms. Hanna."[8]

Plaintiffs allege that this fraudulent scheme began around December of 2011, while Plaintiffs were visiting the Blanchettes in Canada, when Joel Blanchette discussed with Plaintiffs his desire to establish a bank account in the United States, and asked how he

---

[4] Id. ¶ 11.

[5] Id. ¶ 16.

[6] Id. ¶ 17.

[7] Id. ¶ 18.

[8] Id. ¶ 2.

3

could get a "black" American Express card similar to Hanna's.[9] Shortly thereafter, Plaintiffs allege that with Hanna's help, Joel Blanchette opened a Chase bank account (the "Texas Account") at the same Texas branch where Hanna also had an account.[10]  Hanna also made Joel Blanchette an additional card holder on Hill's American Express account, and Joel Blanchette began using the card and paying the bill monthly.[11]

Plaintiffs allege that in February and March of 2012, Joel Blanchette asked Hanna to provide funds to deposit into "the cage" at the Wynn Hotel and Casino in Las Vegas, Nevada, so that he could participate in exclusive high stakes table gambling.[12]  Joel Blanchette allegedly assured Hanna that her funds would never be at risk and could be returned at her request at any time.[13]

Plaintiffs allege that based on Joel Blanchette's assurances, Hanna transferred a total of more than $8.5 million to the Texas Account from April through September 2012.[14]  Plaintiffs allege that

---

[9] Id. ¶¶ 19-20.

[10] Id. ¶¶ 19, 22.

[11] Id. ¶ 20.

[12] Id. ¶ 21.

[13] Id. ¶ 21.

[14] Id. ¶ 23.  Plaintiffs specifically allege that Hanna made $6,400,464 in transfers to the Texas Account, as follows: $500,000 on or about April 2; $7,464 on May 2; $250,000 on May 24; $100,000 on or about May 29; $30,000 on June 5, $1,000,000 on June 8, $2,500,000 in three transactions on July 13, $10,000 in early

Joel Blanchette made numerous cash withdrawals, purchased three Mercedes automobiles costing over half a million dollars, designer goods, and travel by private jets, and accumulated over $100,000 in debt at two Las Vegas hotels.[15]   Plaintiffs allege that in the course of receiving this money, Joel Blanchette made comments to his parents that "I'll have money for you guys," and that it was "payday tomorrow."[16]   Plaintiffs allege that after a trip to Los Angeles together, Mary Blanchette thanked Joel Blanchette for the "suite, the jets, dinners" as "just amazing," and that Blanchette Press and Kim, Mary, and Adam Blanchette "knew or should have known Joel was engaged in something unusual."[17]

Plaintiffs allege that beginning in September 2012, Hanna began to notice high charges on Joel Blanchette's black American Express card and became concerned, that Joel Blanchette falsely assured her that the charges would be removed, and that he subsequently purchased gold bars in London exceeding double his authorized credit limit, which ultimately led to the suspension of

---

September, and $2,013,000 on September 18 and 19.   Id. ¶¶ 25-31.

[15] Id. ¶¶ 26-29.

[16] Id. ¶¶ 25-26.

[17] Id. ¶ 26-27.

the entire account.[18]   On or about September 20, Joel Blanchette moved to London.[19]

Plaintiffs allege that Hanna tracked Joel Blanchette down in London in April 2013, and that he assured Hanna that her money was still at the Wynn.[20]   Plaintiffs allege that Joel Blanchette repeatedly represented that he would return the money, "promised wire transfers were on the way when they were not," and forged receipts for the transfers.[21]   Plaintiffs allege that Mark and Adam Blanchette helped perpetuate the fraud by moving cash at Joel Blanchette's request, that Kim Blanchette, who was aware that Plaintiffs had "transferred a huge amount of money to Joel and are quite concerned about getting it back," used Blanchette Press in an attempt to hide transactions, and that when Plaintiffs inquired about what was going on, Kim and Mary Blanchette "put them off, assured them Joel would never do something like this and, eventually just ignored them."[22]

Plaintiffs allege that when Hanna eventually located Joel, who was hiding in a hotel room, he confessed "that it was all a ruse and he and his entire family were sharing the ill gotten money and

---

[18] Id. ¶ 20.

[19] Id. ¶ 31.

[20] Id. ¶ 37.

[21] Id. ¶ 37.

[22] Id. ¶¶ 36, 38-39.

this scheme was orchestrated with his father's knowledge."[23] Plaintiffs allege that this sharing "resulted in the purchase of a condominium by Kim and Mary Blanchette, in the Canada House in the Village at False Creek, luxury watches, extravagent meals, cars, private jet usage and extraordinary hotel stays."[24]

In this case Plaintiffs allege against Defendants fraud, conspiracy to commit fraud, misapplication of fiduciary property, aiding and abetting misapplication of fiduciary property, civil theft, money had and received, and violation of the Uniform Fraudulent Transfer Act.[25] Plaintiffs seek to recover no less than $8.5 million in actual damages, plus punitive and additional damages, interest, and attorneys' fees, along with imposition of a constructive trust upon Defendants' assets and injunctive relief.[26] Defendants move to dismiss for lack of personal jurisdiction and failure to state a claim.[27]

---

[23] Id. ¶ 41.

[24] Id. ¶ 41.

[25] Document No. 14.

[26] Id.

[27] Document Nos. 7, 8, 10, 31.  The motions at Document Nos. 7, 8, and 10 were filed before Plaintiffs filed their First Amended Complaint.  However, when Plaintiffs amended their pleading, they also responded to those motions, and Defendants have filed replies in support of their motions as applied to Plaintiff's First Amended Complaint.  See Document No. 26 (February 28, 2014 Minute Order) ("The Court will therefore accept the motions at Document Nos. 7, 8, and 10 as addressed to Plaintiffs' First Amended Complaint.").

## II.   Motions to Dismiss Pursuant to Rule 12(b)(2)

### A.   Legal Standard

A federal court may exercise personal jurisdiction over a nonresident defendant if:  (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution.  *See* Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999). Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements.  Id.

This due process inquiry focuses upon whether the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 66 S. Ct. 154, 158 (1945).  "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction."  Lewis v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001).  Specific jurisdiction exists when the cause of action relates to or arises out of the defendant's contacts with the forum.  *See* Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872 n.8

8

(1984). Alternatively, general jurisdiction may be exercised over a defendant whose contacts with the forum are so substantial, systematic and continuous that the defendant is essentially at home in the state. *See* Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853-54 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."). Each defendant's contacts with the forum State must be assessed individually. Willow Bend, L.L.C. v. Downtown ABQ Partners, L.L.C., 612 F.3d 390, 392 (5th Cir. 2010) (citing Calder v. Jones, 104 S. Ct. 1482, 1487 (1984)).

When an evidentiary hearing on the question of personal jurisdiction is not conducted, the party seeking to establish jurisdiction bears the burden of presenting a *prima facie* case of personal jurisdiction. *See* Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000). Proof by a preponderance of the evidence is not required. Johnston v. Multidata Systems Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008). A plaintiff may present a *prima facie* case by producing admissible evidence which, if believed, would suffice to establish the existence of personal jurisdiction. *See* WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989). Uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in

9

the parties' affidavits and other documentation must be construed in the plaintiff's favor.  *See* <u>Alpine View</u>, 205 F.3d at 215.

B.   <u>Analysis</u>

   1.   <u>Blanchette Press</u>

   Plaintiffs argue that Blanchette Press is subject to both general and specific personal jurisdiction in Texas.[1]

   "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." <u>Goodyear</u>, 131 S. Ct. 2846, 2851 (2011).  The uncontroverted evidence is that Blanchette Press, a Canadian business, does not and has never maintained a place of business, office, mailing address, telephone, bank account, or registered agent in Texas, or owned property or paid taxes in Texas.[2] Plaintiffs nevertheless argue that Blanchette Press is subject to general jurisdiction because (1) Kim Blanchette has traveled to Texas five times over the course of ten years in connection with his role as Blanchette Press's president, (2) Blanchette Press has sponsored an annual conference in Texas and has donated the printing of materials distributed to attendees, some of whom were

_____

   [1] Document No. 17.

   [2] Document No. 7, ex. 1 ¶¶ 3-7.

10

from Texas, and (3) Plaintiffs have often paid Blanchette Press for work done in Texas by it or its Texas subsidiary BPI.[30]   These limited contacts with Texas are insufficient to establish that Blanchette Press is "essentially at home" in Texas.  *See* <u>Daimler AG v. Bauman</u>, 134 S. Ct. 746, 761 (2014) ("[T]he inquiry under <u>Goodyear</u> is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'") (explaining that the place of incorporation and principal place of business are the paradigmatic bases for general jurisdiction for a corporation); *see also, e.g.,* <u>Cent. Freight Lines Inc. v. APA Transp. Corp.</u>, 322 F.3d 376, 381 (5th Cir. 2003) (defendant company's routine shipments to and from Texas and regular sending of sales people to the state to develop business, negotiate contracts, and service national accounts were "clearly not substantial enough" to subject it to general jurisdiction).

Plaintiffs argue that Blanchette Press is subject to specific jurisdiction in Texas because Plaintiffs met Joel Blanchette through the Plaintiffs' business relationship with Blanchette Press, and "[t]here is also evidence indicating that Blanchette Press Ltd. was involved in perpetuating and concealing the fraud

---

[30] Document No. 17 at 4.

and breach of fiduciary duty committed by Joel Blanchette."[31]  The
Blanchette family's relationship with Plaintiffs, even if it can be
attributed to Blanchette Press, is insufficient to establish
personal jurisdiction because the "minimum contacts" analysis
"looks to the defendant's contacts with the forum State itself, not
the defendant's contacts with persons who reside there." Walden v.
Fiore, 134 S. Ct. 1115, 1122 (2014) ("[T]he plaintiff cannot be the
only link between the defendant and the forum.  Rather, it is the
defendant's conduct that must form the necessary connection with
the forum State that is the basis for its jurisdiction over him.");
see also Kelly v. Gen. Interior Const., Inc., 301 S.W.3d 653, 660
(Tex. 2010) ("[J]urisdictional analysis always centers on the
defendant's actions and choices to enter the forum state and
conduct business.") (emphasis in original).

Likewise, because the focus is on each individual defendant's
contacts with the state, personal jurisdiction does not arise from
a co-conspirator's acts directed at Texas.  See Delta Brands Inc.
v. Danieli Corp., 99 F. App'x 1, 6 (5th Cir. 2004) ("To establish
its prima facie case of specific personal jurisdiction, [the
plaintiff is] required to demonstrate that [defendant]
individually, and not as part of the conspiracy, had minimum
contacts with Texas.") (citing Guidry v. United States Tobacco Co.,
188 F.3d 619, 625 (5th Cir. 1999)).  Thus, the plaintiff must show

---

[31] Id. at 3-4.

that either the alleged conspiracy or the defendant's part in the conspiracy was related to or arose out of that defendant's contacts with Texas. Id.; see also Nat'l Indus. Sand Ass'n v. Gibson, 897 S.W.2d 769, 773 (Tex. 1995) ("[W]e decline to recognize the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state.  Instead, we restrict our inquiry to whether [the defendant] itself purposefully established minimum contacts such as would satisfy due process . . . ."); Dontos v. Vendomation NZ Ltd., 3:11-CV-0553-K, 2012 WL 3702044 (N.D. Tex. Aug. 27, 2012) ("[T]he Court rejects Plaintiffs' argument that each Defendant can be subject to specific jurisdiction solely because they participated in an alleged conspiracy in which a co-conspirator had contacts with Texas.").

Plaintiffs rely upon what appears to be email correspondence between Kim Blanchette, using his "kim@blanchettepress.com" email account, and Joel Blanchette discussing the transfer of large amounts of money, including one correspondence in which Kim Blanchette writes, "Banks are asking for trail so I am trying to run through company."[32]  However, even assuming this evidence is competent, Plaintiffs produce no evidence linking this conversation

---

[32] Id., ex. A-3 at 22 of 36.

13

to the alleged fraud against Plaintiffs in Texas.[33]  Plaintiffs do not allege any actions by Blanchette Press directed at Texas in connection with the alleged conspiracy, nor do they allege any way in which the alleged conspiracy arose out of Blanchette Press's contacts with Texas.  Plaintiffs have not established that Blanchette Press is subject to specific jurisdiction in Texas, and Plaintiffs' claims against Blanchette Press are dismissed for lack of personal jurisdiction.

  2.  <u>Kim, Mary, Adam, Matt, Aaron, and Mark Blanchette</u>

  Plaintiffs argue that Kim, Mary, Adam, Matt, Aaron, and Mark Blanchette are subject to specific jurisdiction in Texas based on

---

  [33] Blanchette Press asserts that these email exchanges are not properly authenticated because Hanna "fails to explain how she came into possession of personal correspondence between defendants to this case, none of which involves her or Mr. Hill."  Document No. 20 at 4.  Blanchette Press does not, however, challenge the authenticity of the emails.

  Plaintiffs also produce purported Canadian tax documents indicating that Joel Blanchette received $7,750,000.00 in income from Blanchette Press in 2012--compared to $12,000 the year before.  *See* Document No. 17, ex. A-4.  Blanchette Press challenges their authenticity and produces affidavits of Kim Blanchette and two accountants, each testifying that these purported tax documents were not prepared by Blanchette Press and that Blanchette Press has never paid Joel Blanchette $7,750,000.  Document No. 20, Exs. A, B, C.  Because Plaintiffs verify only that these documents "appear to be" actual tax forms, the documents are not authenticated and are not evidence to support Plaintiffs' claim that Blanchette Press was involved in the alleged conspiracy to defraud Plaintiffs.  *See* Document No. 17, ex. A ¶ 9 (Decl. of Heidi Hanna) ("In my investigation of these matters, I have seen copies of what appear to be Canadian Forms "T-4", a federal tax reporting document . . . .  True and correct copies are attached as Exh. 4.").

their alleged conspiracy with Joel Blanchette to perpetuate and conceal his fraud.[34]   However, as already discussed, to establish a *prima facie* case of specific personal jurisdiction, Plaintiffs must demonstrate as to each Defendant that he or she individually, and not as part of the conspiracy, had minimum contacts with Texas --that either the alleged conspiracy or the Defendant's alleged wrongdoing was related to or arose out of that Defendant's contacts with Texas.   <u>Delta Brands</u>, 99 F. App'x at 6; *see also* <u>Rush v. Savchuk</u>, 100 S. Ct. 571, 579 (1980) ("Naturally, the parties' relationships with each other may be significant in evaluating their ties to the forum.   The requirements of <u>International Shoe</u>, however, must be met as to each defendant over whom a state court exercises jurisdiction.").

Plaintiffs have not met their burden to establish a *prima facie* case of personal jurisdiction as to any of these Defendants. Although they allege that Kim, Mary, Adam, Matt, Aaron, and Mark Blanchette "participated, *i.e.* conspired, with Joel Blanchette in varying degrees and differing times in perpetuating and/or concealing [his] fraud," Plaintiffs do not point to a single contact of any of these Defendants with Texas that is related in any way to the alleged fraud conspiracy.   Instead, Plaintiffs rely on Texas case law involving conspirator liability for the actions

---

[34] Document No. 16 at 3-4.   Plaintiffs do not argue that these Defendants are subject to general jurisdiction in Texas.

of co-conspirators, cases that pertain to liability on the merits;
not one of them discusses personal jurisdiction.[35]   Because
Plaintiffs have not alleged facts showing that the alleged
conspiracy or any tortious act of Kim, Mary, Adam, Matt, Aaron, or
Mark Blanchette was related to any of their contacts with Texas,
Plaintiffs have not established a *prima facie* case of personal
jurisdiction over any of these Defendants.  Gibson, 897 S.W.2d at
773, Delta Brands, 99 F. App'x at 6.  Plaintiffs' causes of action
against Kim, Mary, Adam, Matt, Aaron, and Mark Blanchette are
therefore dismissed for lack of personal jurisdiction.

    3.   Joel Blanchette

Plaintiffs argue that Joel Blanchette is subject to both
general and specific jurisdiction in Texas.[36]   The uncontroverted
evidence is that Joel Blanchette has never been a resident of
Texas,[37] and Plaintiffs' general jurisdiction argument is based
solely on his use of a Texas bank account and a cellular telephone
billed to a Texas address.[38]   These contacts fall far short of
establishing that Joel Blanchette is "at home" in Texas, and
Plaintiffs therefore have not shown that he is subject to general

---

[35] *See* id. at 3-5.

[36] Document No. 33 at 2-5.

[37] Document No. 31, ex. 1 ¶ 2.

[38] Document No. 33 at 3.

16

jurisdiction in Texas.  *See* <u>Goodyear</u>, 131 S. Ct. at 2853 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.").

Plaintiffs argue that Joel Blanchette is subject to specific jurisdiction in Texas because he opened a Texas bank account, which was "a key instrumentality used to perpetrate the fraud," and because he obtained a cellular telephone billed to a Texas address, and used that telephone to communicate with Plaintiffs in connection with his fraud.[39]   Joel Blanchette denies in his Affidavit that he opened a bank account in Texas[40] and produces evidence that Hanna actually opened the account for him,[41] which Joel Blanchette testifies was without his permission.[42]   However, conflicts in the evidence must be resolved in Plaintiffs' favor, <u>Alpine View</u>, 205 F.3d at 215, and Plaintiffs produce sufficient

---

[39] <u>Id.</u> at 3-4; <u>id.</u>, ex. A ¶ 5.  Plaintiffs do not assert that they received any of these calls while they were in Texas.  *See* <u>id.</u>

[40] *See* Document No. 31, ex. 1 ¶¶ 9-10 ("9. I have never opened a bank account in the State of Texas.  10. I have never used a bank account in the State of Texas related to any allegation in the First Amended Complaint.").

[41] *See* Document No. 34, ex. 1 at 1 of 5 (email from Hanna to Joel Blanchette stating, "Your acct will be open today").

[42] Document No. 31, ex. 1 ¶ 11 ("Heidi Hanna opened a bank account in my name in the State of Texas without my permission or authority.").

evidence to establish at this stage that Joel Blanchette caused the account in Texas to be opened in his name.[43]

"It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil or may arise incident to the commission of a single act directed at the forum." Bullion v. Gillespie, 895 F.2d 213, 216 (5th Cir. 1990) (citing Burger King Corp. v. Rudzewicz, 105 S. Ct. 2174, 2184 (1985) ("we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction . . .")). See also Guidry, 188 F.3d at 628 ("When a nonresident defendant commits . . . an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state,

---

[43] See Document No. 33, ex. A-4 (email from Joel Blanchette to Kim Blanchette referencing "my chase acct I set up thru texas"). The emails produced by Joel Blanchette also contradict his affidavit testimony that Hanna acted without his permission. See Document No. 34, ex. 1 at 4 of 5 (email from Hanna stating, "Joel – we have to get your bank acct opened ASAP. Where are your papers? . . . Once we get those papers, Then you will have an acct open in your own NAME and a credit card and will be able to wire to yourself and spend as you like," and response from Joel Blanchette stating, "Its all been sent. As of 40 mins ago.").

Joel Blanchette also disputes that the Chase account was actually a Texas account, pointing to invoices from the account mailed to him at a Vancouver address. Document No. 34 at 5; Document No. 33, ex. A-7 at 1 of 8, 5 of 8. However, Joel Blanchette in his emails refers to "my chase acct I set up thru texas" and identifies a Texas address for the bank account. See Document No. 33, ex. A-4; id., ex. A-6 at 1 of 3.

including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasi-offenses.") (citations omitted). Plaintiffs allege that Joel Blanchette caused Hanna to open a bank account in his name in Texas, which he then used to facilitate his ongoing fraud by instructing Plaintiffs to transfer money to the account, causing tortious injury to Plaintiffs in Texas. In so doing, Joel Blanchette purposefully directed his tortious conduct toward Texas. Plaintiffs are only required to establish a *prima facie* case for personal jurisdiction, and resolving all factual disputes in favor of Plaintiffs, the Court finds that they have done so. *See* Calder, 104 S. Ct. at 1487 ("An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.").

"Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair" based on the "traditional notions of fair play and substantial justice." Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 215 (5th Cir. 1999). In considering the fairness issue, the Court examines: "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states

in furthering fundamental substantive social policies." <u>Guidry</u>,
188 F.3d at 630 (citations omitted). "To show that an exercise of
jurisdiction is unreasonable once minimum contacts are established,
the defendant must make a 'compelling case' against it." <u>Wien Air</u>,
195 F.3d at 215 (quoting <u>Burger King</u>, 105 S. Ct. at 2185). "It is
rare to say the assertion [of personal jurisdiction] is unfair
after minimum contacts have been shown." <u>Id.</u>

Joel Blanchette argues that subjecting him to personal
jurisdiction in Texas would offend traditional notions of fair play
and substantial justice because of his minimal contacts with Texas
and because Canada has a greater interest in resolving the dispute
than Texas and resolution there would be more efficient.[44]
Undoubtedly, Joel Blanchette, a Canadian citizen, will be burdened
by defending a suit in Texas. *See* <u>Asahi Metal Indus. Co., Ltd. v.</u>
<u>Superior Court</u>, 107 S. Ct. 1026, 1033 (1987) ("The unique burdens
placed upon one who must defend oneself in a foreign legal system
should have significant weight in assessing the reasonableness of
stretching the long arm of personal jurisdiction over national
borders.").[45]   However, Plaintiffs would be no less burdened if

---

[44] Document No. 31 at 9.

[45] <u>Asahi</u> was quite different than the instant case in that the
only remaining parties were a Taiwanese plaintiff and a Japanese
defendant, and the remaining claim involved a transaction in Taiwan
resulting in components being shipped from Taiwan to China.  107 S.
Ct. at 1033.  The Court explained that "[w]hen minimum contacts
have been established, often the interests of the plaintiff and the
forum in the exercise of jurisdiction will justify even the serious

forced to litigate in Canada. *See* <u>Wien Air</u>, 195 F.3d at 216 ("Resolving the conflicts in a light most favorable to the plaintiff, we find no overwhelming burden to the [German] defendant that outweighs the legitimate interests of the plaintiff and the forum state. At most [defendant] demonstrates an inconvenience which would be equally felt by forcing the plaintiff to litigate in Germany.").

Furthermore, Plaintiffs allege that Joel Blanchette committed fraud, and Texas has a strong interest in protecting its citizens from fraud. *See, e.g.*, <u>Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.</u>, 517 F.3d 235, 245 (5th Cir. 2008) ("We have held that in a case like this, where a cause of action for fraud committed against a resident of the forum is directly related to the tortious activities giving rise to personal jurisdiction, the exercise of that jurisdiction will be considered fair.") (citing <u>Wien Air</u>, 195 F.3d at 215). Joel Blanchette--who, according to Plaintiffs' allegations, purposefully opened a bank account in Texas and used it in connection with his scheme fraudulently to obtain millions of dollars from two Texas residents--has not demonstrated that this Court's exercise of jurisdiction raises any

---

burdens placed on the alien defendant," but that "[b]ecause the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished." <u>Id.</u> Here, of course, it is undisputed that Plaintiffs are resident citizens of Texas.

fairness issues of Constitutional proportions.  Joel Blanchette is subject to personal jurisdiction in Texas.

### III.  Motion to Dismiss Pursuant to Rule 12(b)(6)

#### A.  Legal Standard

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one.  *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974), *abrogated on other grounds by* Harlow v. Fitzgerald, 102 S. Ct. 2727 (1982).  The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint.  *See* Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997).  To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

22

misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949
(2009).  While a complaint "does not need detailed factual
allegations . . . [the] allegations must be enough to raise a right
to relief above the speculative level, on the assumption that all
the allegations in the complaint are true (even if doubtful in
fact)." <u>Twombly</u>, 127 S. Ct. at 1964-65 (citations and internal
footnote omitted).

B.   <u>Analysis</u>

    Joel Blanchette does not argue that Plaintiffs have failed to
state a claim against him for fraud or money had and received, but
moves to dismiss Plaintiffs' claims for misapplication of fiduciary
property, conspiracy to commit fraud, civil theft, and violation of
the Texas Uniform Fraudulent Transfer Act for failure to state a
claim.[46]

    Plaintiffs have failed to state a claim under the Texas
Uniform Fraudulent Transfer Act ("UFTA"), which governs certain
fraudulent transactions arising from creditor-debtor relationships.
Plaintiffs conclusorily allege that Joel Blanchette violated the
UFTA,[47] but they have neither identified which section of the UFTA
he allegedly violated, nor pled "enough facts to state a claim to

---

[46] Document No. 31 at 9-13.

[47] Document No. 14 ¶ 42 ("Further, Defendants are liable for:
. . . Violation of the Uniform Fraudulent Transfer Act.").

relief [under the UFTA] that is plausible on its face." <u>Twombly</u>, 127 S. Ct. at 1974. Plaintiffs' UFTA claim is therefore dismissed.

The other claims Joel Blanchette moves to dismiss are possible legal theories for a victim's recovery of losses--in the context of this case--arising from various unlawful, fraudulent, and/or deceitful conduct. Given the breadth, scope, and magnitude of Plaintiffs' voluminous and detailed fraud allegations, and construing the same favorably to Plaintiffs, Joel Blanchette has failed to show that Plaintiffs have not pled plausible claims for misapplication of fiduciary property, conspiracy to commit fraud, and civil theft, or that such claims should be dismissed at this stage of the proceedings before any evidence is received.

### IV.   <u>Order</u>

Based on the foregoing, it is

ORDERED that Defendant Blanchette Press Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction (Document No. 7) and Defendants Peter Kim Blanchette, Mary Ellen Blanchette, Adam Blanchette, Matt Blanchette, Aaron Blanchette, and Mark Blanchette's Amended Motion to Dismiss for Lack of Personal Jurisdiction (Document No. 10) are GRANTED, and Plaintiffs' claims against Defendants Blanchette Press, Ltd., Peter Kim Blanchette, Mary Ellen Blanchette, Adam Blanchette, Matt Blanchette, Aaron

Blanchette, and Mark Blanchette are DISMISSED without prejudice for lack of personal jurisdiction.  It is further

ORDERED that Defendant Joel Blanchette's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (Document No. 31) is in all things DENIED, except only for Plaintiffs' claim against Defendant Joel Blanchette for violation of the Texas Uniform Fraudulent Transfer Act, which claim is DISMISSED with prejudice for failure to state a claim upon which relief can be granted.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED at Houston, Texas, on this 21 ST day of August, 2014.


EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE